IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

JENNIFER CALVERT,                )
                                 )
                                 )
        Plaintiff,                )
                                 )
vs.                              )   No. 2:10-cv-02765-AJT-dkv
                                 )
AMERICOLD LOGISTICS, LLC,        )
                                 )
                                 )
        Defendant.                )
_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
_____

This is an employment discrimination action in which the plaintiff, Jennifer Calvert ("Calvert"), alleges that she has a disability under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and that the defendant, AmeriCold Logistics, LLC ("AmeriCold"), failed to offer her a reasonable accommodation and discriminated against her by repeatedly disciplining her. Calvert also alleges that AmeriCold terminated her in retaliation for filing a complaint with the Tennessee Human Rights Commission ("THRC"). AmeriCold filed a motion for summary judgment. Calvert filed a response, and AmeriCold filed a reply. The motion was referred to the United States Magistrate Judges for a report and recommendation. For the reasons set forth below, it is recommended that AmeriCold's motion for summary judgment be granted.

## I. PROPOSED FINDINGS OF FACT

For purposes of summary judgment, the court finds the following facts are undisputed:

Calvert worked for AmeriCold as a lift truck operator at its refrigerated warehouse facilities in West Point, Mississippi, and Arlington, Tennessee, from September 25, 1998 until December 28, 2009. (Pl.'s Resp. to Def.'s Statement of Facts, D.E. 31-2, at 2.) Calvert suffers from interstitial cystitis, which she alleges affects the frequency and urgency of her need to urinate. (*Id.* at 7.) Calvert also claims that her condition substantially limits her ability to perform other "major life" activities, including, but not limited to, sleeping, driving more than a limited time, watching a movie, eating out, drinking, and shopping at the mall. (Pl.'s Statement of Material Facts, D.E. 31-3, at 3.) Calvert never wore a diaper to work but claims that after she was disciplined for failure to abide by AmeriCold's break policy she began to attempt to hold her urine and, as a result, suffered leakage and began to wear panty liners and keep panty liners in her work locker. (Pl.'s Resp. to Def.'s Statement of Facts, D.E. 31-2 at 9.)

In January of 2009, AmeriCold issued a written break time policy, which stated that rest and lunch breaks could not exceed a total of seventy minutes per day. (*Id.* at 15.) The policy allowed

two twenty-minute paid rest breaks and a thirty-minute paid lunch break during an eight-hour shift. (*Id*. at 13.) Employees were expected to use the restroom during their break time. (*Id*.) In addition, warehouse workers also received an additional grace period of up to four minutes break time per day. (*Id*.)

On January 21, 2009, Calvert informed her supervisor that there was a medical statement in her folder regarding her medical condition.[1] (Calvert Dep. 106:1–3, Nov. 16, 2011, D.E. 31-23.) AmeriCold requested an updated doctor's note, which Calvert provided on February 6, 2009. The updated letter stated that Calverts "uses [the] bathroom frequently during the day due to medical problems." (Letter from Dr. Yair Walzer, D.E. 31-12, at 3.)

To accommodate Calvert's medical condition, AmeriCold allowed her to take restroom breaks as necessary as long as she did not exceed the seventy-minute daily break time allotment. (Pl.'s Resp. to Def.'s Statement of Facts, D.E. 31-2, at 17.) On November 9, 2009, Calvert received verbal counseling for exceeding her allotted break time on nine different days between October 26, 2009 and November 5, 2009. (*Id*. at 23–25.) On each of these days, Calvert took a full lunch break. AmeriCold applies a progressive discipline system, which consists of the following steps: (1) verbal counseling; (2) first written counseling; (3) second written

---

1. The court is unable to find this medical statement in the record. Neither party lists it as an exhibit. It appears to be mentioned exclusively in Calvert's deposition. (*See* Def.'s Index of Evidence, D.E. 30-3; Pl.'s Index of Evidence, D.E. 31-4; Calvert Dep. 106:1–3, D.E. 31-23.)

counseling; (4) suspension and request for an associate letter of commitment; and (5) termination. (Pl.'s Resp. to Def.'s Statement of Facts, D.E, 31-2, at 6-7.) Calvert refused to sign the counseling form because she believed AmeriCold's accommodation was unreasonable. (*Id.* at 25.) After receiving the verbal counseling, Calvert filed a complaint with the THRC on November 17, 2009. (*Id.* at 44.)

On December 2, 2009, Dan Pritchard ("Pritchard"), an AmeriCold manager, met with Calvert to discuss how Calvert was exceeding the break time and to discuss Calvert's request for an alternative accommodation. (*Id.* at 25.) At that meeting, Pritchard notified Calvert that he received notice of her THRC complaint. (*Id.* at 45.) Pritchard advised Calvert that no one at AmeriCold would retaliate against her in any way based on her complaint. *(Id.)* Pritchard again informed Calvert that, as an accommodation for her alleged medical condition, Calvert would be allowed to take as many breaks as she needed and whenever she needed to take them, as long as she did not exceed the seventy-minute allotment. (*Id.*) Pritchard told Calvert that he would be willing to consider any other suggestions that she had for a reasonable accommodation. (*Id.* at 26.) According to Calvert, she requested additional time to be added to the seventy-minute limit because she was concerned that she may need time over the seventy-minute allotment to use the restroom. (*Id.*)

Calvert continued to exceed her daily break-time allotment. On December 4, 2009, Calvert exceeded her allotted break time; she used 29 minutes of the allocated two 20 minute breaks, 30 minutes for lunch and 20 minutes for restroom use. (*Id*. at 27.) She received written counseling on December 7, 2009. (*Id.* at 26–27.) On December 9, 2009, Calvert again exceeded her allotted break time and received written counseling on December 10, 2009 for violating the break-time policy. (*Id.* at 28.) Specifically, Calvert used 29 minutes of the allocated two 20 minute breaks, 28 minutes for lunch, and 23 minutes for restroom use. (*Id.* at 28.) On December 10, 2009, Calvert exceeded her seventy-minute allotment. (Id. at 29.) Specifically, Calvert used 30 minutes of the allocated two 20 minute breaks, 29 minutes for lunch, and 33 minutes for restroom use. (*Id*.) As a result, Calvert received written counseling on December 21, 2009, was suspended without pay on December 21, 2009, and asked to complete a commitment letter upon her return to work on December 22, 2009. (*Id*. at 30.) Calvert completed the letter, which stated that she planned to use break periods in a timely manner for resting, eating, and using the bathroom. (*Id.* at 30–31.) But, on December 22, 2009, the day Calvert returned to work, she again went over her allotted break time. (*Id.* at 31.) Specifically, Calvert used 32 minutes of the allocated two 20 minute breaks, 31 minutes for lunch, and 13 minutes for restroom use. (Id.) Although Calvert could have been fired for her fifth

5

infraction under AmeriCold's discipline policy, she was again suspended on December 23, 2009. (*Id.* at 33-34.) On December 28, 2009, Calvert returned to work and was presented with a memorandum of commitment and was advised that AmeriCold was willing to allow her to return to work if she committed that she would not exceed the daily seventy minutes allowed for breaks. (*Id.* at 34.) Calvert refused to sign the memorandum and, as a result, was terminated on December 29, 2009. (*Id.*)

Around October 7, 2011, Calvert begin working as a forklift operator at Ingram Micro. (*Id.* at 11.) Calvert did not indicate on her job application that she was disabled or inform anyone at Ingram Micro of her disability. (*Id.*) Calvert also has not requested an accommodation. (*Id.*)

## II. PROPOSED CONCLUSIONS OF LAW

The ADA prohibits discrimination "against a qualified individual with a disability on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Calvert claims that AmeriCold discriminated against her in violation of the ADA by failing to make a reasonable accommodation for her "disability" and by treating non-disabled warehouse employees more favorably. Calvert also claims that AmeriCold terminated her in retaliation for filing a complaint with the THRC. AmeriCold moves for summary judgment on all three claims.

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992). The moving party has the burden of showing that there are no genuine issues of material fact in the case. *LaPointe,* 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must

determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251—52).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378.  Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

A.   <u>Failure to Accommodate Claim</u>

To establish a prima facie case for failure to provide a reasonable accommodation, Calvert must demonstrate that (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer was aware of her disability; (4) she requested a reasonable accommodation; and (5)

the employer failed to provide a reasonable accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)(citing *Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997)). AmeriCold argues that it is entitled to summary judgment because Calvert is not disabled under the ADA.

The ADA, as amended by the ADA Amendment Act of 2008 ("ADAAA"), defines "disability" as (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such impairment; or (C) being regarded of having such an impairment. 42 U.S.C. § 12102(1). The act defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks . . . walking, standing, lifting, bending, speaking, breathing . . . and working," as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C. § 12102(2). The ADA mandates the term "substantially limits" be interpreted consistently with the findings and purposes of the ADAAA. 42 U.S.C. § 12102(4)(B). The purpose of the ADAAA was, partly, to reject a demanding definition for "substantially limits" that the Supreme Court laid out in *Toyota Motor Mfg., Ky., Inc. v.*

*Williams*, 534 U.S. 184, 197–199 (2002).[2]  In *Toyota Motor*, the Court required an individual to be prevented or severely restricted from doing activities that are of central importance to most people's daily lives.  Thus, now the standard to apply when assessing whether a person is "substantially limited" by an impairment is less than what *Toyota Motor* required.

AmeriCold does not dispute that Calvert's medical condition — interstitial cystis — is an impairment.  AmeriCold disputes whether Calvert's condition substantially limits her ability to perform major life activities.

Calvert asserts that her condition substantially limits her ability to control her bladder and affects her sleep.  Calvert states that she had to wear a panty liner at work to prevent

---

2. One of the other purposes of the ADAAA was to require the EEOC to revise their regulations that defined "substantially limits" as "unable to perform a major life activity" or "significantly restricted as to the condition, manner or duration under which an individual can perform . . . a major life activity" as compared to "the average person in the general population." 29 C.F.R. § 1630.2(j)(1)(2010).  The EEOC definition rejected by Congress in the ADAAA is the definition cited by AmeriCold in their motion for summary judgment. (D.E. 30-1, at 6.)  The EEOC has, since the ADAAA, redefined "substantially limits." 29 C.F.R. § 1630.2(j)(2011).  The new EEOC definition does not require an impairment to significantly or severely restrict an individual from performing a major life activity. *Id.*  The new definition explains that "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.*  The EEOC regulations explain that the real issue in disability cases brought under the ADA is "whether entities have complied with their obligations" and that "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." *Id.*  In making the assessment, "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA" *Id.*  The new EEOC regulations, however, were implemented after this lawsuit was filed, and the regulations do not appear to apply retroactively.  And neither party argues that the court should apply them retroactively.  Even so, the court finds the new regulations persuasive authority for determining whether Calvert's condition substantially limits her ability to perform major life activities.

leakage when she tried to hold her urine and that her sleeping is affected because she has to wake up to urinate two to three times per night. Calvert also claims that her condition substantially affects an inexhaustive number of areas in her life, "including but not limited to, driving more than a limited time, being able to watch a movie, eating out, drinking and shopping at the mall." (D.E. 31-1, at 10.) Assuming these facts as true, although AmeriCold disputes them, this court is unable to find that Calvert is substantially limited in performing any of these major life activities even though she may have to take bathroom breaks while performing them. Indeed, she can use the restroom, drive her car, sleep, watch a movie, eat, and shop at the mall. While the ADAAA did eliminate any definition that requires her to be substantially or severely "restricted," Calvert's condition appears to cause her to be inconvenienced while, but not substantially limited in, performing these activities.[3] Moreover, Calvert is currently employed, and she has not informed anyone at her new job of her disability or requested an accommodation. Viewing the evidence in

---

3. Prior to the ADAAA amendments, federal courts that considered the issue of incontinence, or inability to control waste elimination, resisted finding that a plaintiff was disabled under the ADA. *Stoj v. New Britain Bd. of Ed.*, 3:09-cv-78 (CFD), 2011 U.S. Dist. LEXIS 75979, at * 13 (D. Conn. July 14, 2011); *Shannon v. Verizon New York, Inc.*, No 05-cv-555, 2007 U.S. Dist. LEXIS 28096, at *4 (N.D.N.Y April 13, 2007); *Savacy v. Research Found. Of the City of New York*, 193 F.Supp.2d 611, 629-30 (E.D.N.Y. 2002); *Williams v. H.N.S. Mgmt. Co., Inc.*, 56 F.Supp.2d 215, 221 (D. Conn. 1999). And although the ADAAA amendments and the new EEOC regulations broadened the scope of the ADA, the new EEOC regulations, which the court finds persuasive on the issue, still make clear that "not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(ii)(2011).

a light most favorable to Calvert, she is not substantially limited in performing major life activities.

Calvert also claims that she meets the definition of disability because AmeriCold had a record of her "disability." Calvert points to the fact that AmeriCold possessed a letter from her doctor describing her condition, which led AmeriCold to provide an accommodation that allowed Calvert to use the restroom whenever she needed. But the ADA requires a record of an impairment that substantially limits one or more major life activities, and AmeriCold did not have a "a record of such an impairment." 42 U.S.C. § 12102(1)(B). As discussed above, the impairment does not substantially limit Calvert's ability to perform major life activities. The fact that AmeriCold was aware of Calvert's medical condition does not convert it into a disability under the ADA. Accordingly, it is recommended that summary judgment be granted on this claim.

B.  Disparate Treatment Claim

To establish a prima facie case of disability discrimination based on disparate treatment, Calvert must show the following five elements: (1) that she is an individual with a disability; (2) that she is otherwise qualified to perform the job requirements with or without reasonable accommodation; (3) that she suffered an adverse employment action;(4) that her employer knew or had reason to know of her disability; and  (5) that similarly situated non-disabled

12

employees were treated more favorably. *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007); *Tally v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). Calvert did not respond to AmeriCold's arguments in her response. Regardless, summary judgment is appropriate because Calvert is not disabled under the ADA.

C. <u>Retaliation Claim</u>

Calvert also claims that AmeriCold retaliated against her for filing a claim with the THRC. To establish a prima facie claim of retaliation, a plaintiff must show (1) that she engaged in protected activity; (2) that the employer was aware of her protected activity; (3) that the employer subsequently took an adverse employment action against her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Once the employer satisfies this burden, the plaintiff bears the burden of proving pretext. To prove pretext, a plaintiff must show that a defendant's proffered nondiscriminatory reasons (1) had no basis in fact; (2) did not ultimately motivate its actions; or (3) were

insufficient to motivate its actions. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083-84 (6th Cir. 1994). So long as an employer has an honest belief in its proffered nondiscriminatory reason for an adverse employment action, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559 (6th Cir. 2009).

AmeriCold does not dispute that Calvert engaged in protected activity by contacting the THRC. AmeriCold disputes causation and argues that the disciplinary action taken against Calvert was not causally related to her filing her THRC claim. In order to establish a casual connection, Calvert "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed" her claim with the THRC. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Calvert is unable to do so.

Calvert filed a complaint with the THRC on November 17, 2009, *after* she had received verbal counseling, the first step of AmeriCold's disciplinary policy, on November 9, 2009, for exceeding her allotted break time on nine different days between October 26, 2009 and November 5, 2009. Calvert continued to exceed the break times and was disciplined on December 7, 10, 21, and 22, 2009. On December 28, 2009, Calvert was terminated after she admittedly refused to sign a Memorandum of Commitment, which stated that she

14

would agree to comply with the break time policy.

Calvert claims that she can establish a causal connection through temporal proximity because AmeriCold applied "unprecedented scrutiny" to Calvert after it became aware she filed her complaint with the THRC. But Calvert does not cite any facts to support her assertion that AmeriCold applied an "unprecedented" level of scrutiny in proceeding with its disciplinary action against her. Although temporal proximity, when sufficiently close, may raise a retaliatory inference, *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004), any inference that is created by the temporal proximity of her THRC complaint and the subsequent disciplinary action is undermined by the fact that disciplinary action was initiated before Calvert filed the THRC complaint. Indeed, "[w]here the subsequent disciplinary action is consistent with prior employer disciplinary actions, the inference of retaliation is undermined." *Hegwood v. Pharmacia/Upjohn*, 985 F.Supp. 728, 734 (W.D. Mich. 1997)(citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1067 (6th Cir. 1990)).

Further, even if Calvert could successfully establish a prima facie claim, AmeriCold has articulated a legitimate, nondiscriminatory reason for its actions, and Calvert has not brought forth sufficient evidence to demonstrate pretext. AmeriCold terminated Calvert because she did not sign the Memorandum of Commitment. Without citing any record evidence,

15

Calvert argues that AmeriCold "knew" Calvert could not conform with a "knowingly flawed" accommodation because of her history of noncompliance, but instead of modifying the accommodation, AmeriCold "targeted" Calvert for termination. (D.E. 31-1, at 20.) But "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination." *Id.* (citing *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Accordingly, this court recommends that summary judgment be granted on Calvert's retaliation claim.

### III. RECOMMENDATION

Based on the foregoing reasons, the court recommends that summary judgment be granted.

Respectfully submitted this 26th day of June, 2012.

S/ Diane K. Vescovo  
Diane K. Vescovo  
United States Magistrate Judge